IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CRYSTAL ATKINSON,<br><br>       Plaintiff,<br><br>v.<br><br>NANCY BERRYHILL,<br>Acting Commissioner of Social Security,<br><br>       Defendant. | **MEMORANDUM DECISION**<br><br>Case No. 2:16-cv-01176- DBP<br><br>Magistrate Judge Dustin B. Pead |

The parties consented to this court's jurisdiction under 28 U.S.C. 636(c). (ECF No. 16). Currently pending before the court is Plaintiff Crystal Atkinson's ("Plaintiff") appeal of the Commissioner of Social Security's ("Commissioner") decision denying Plaintiff's claim for Supplemental Security Income. The court heard oral argument on February 5, 2018. Having considered the parties' briefs, the administrative record, the relevant law, and the parties' arguments, the court **REMANDS** this case for further consideration by the Commissioner.

## I. PROCEDURAL HISTORY

This case has a somewhat lengthy procedural history, including an earlier stipulated remand from this court. Plaintiff first applied for Supplemental Social Security income in January 2012, alleging a disability onset date of January 18, 2012. (Tr. 203–12). Plaintiff's initial application was denied on May 30, 2012, and upon reconsideration on September 6, 2012. (Tr. 103, 122). At Plaintiff's request, ALJ Norman L. Bennett held an administrative hearing on December 6, 2013. (Tr. 31–48). On January 6, 2014, ALJ Bennett issued his decision denying Plaintiff benefits. (Tr. 9–30). The Appeals Council denied Plaintiff's request for review on December 17, 2014 (Tr. 1–6). Plaintiff appealed that decision to the District of Utah in January

2015. *Atkinson v. Colvin*, No. 2:15-cv-50 (D. Utah 2015). On August 27, 2015, this court entered a judgment remanding the case based on a stipulated motion. *Id.*; (Tr. 863–68). On September 28, 2015, the Appeals Council then remanded the case to the ALJ, providing certain instructions on remand. (Tr. 869–74). The ALJ convened a second hearing on June 9, 2016. (Tr. 809–28). On October 4, 2016, the ALJ again issued a decision finding Plaintiff not disabled. (Tr. 782–807). Plaintiff then filed the present appeal.

## II. FACTUAL BACKGROUND

Plaintiff was born in 1979. (Tr. 167). Plaintiff has a seventh-grade education. (Tr. 233, 359). Plaintiff has no past relevant work. (Tr. 797). Plaintiff alleges disability due to physical problems (arthritis, floating bone in right foot, lower back pain, chronic diarrhea, stomach pain, and carpal tunnel syndrome) as well as mental problems (anxiety, depression, post-traumatic stress disorder ("PTSD")). (Tr. 232). The bulk of the court's analysis centers on three opinions from medical sources. The court will briefly summarize these opinions.

### a. Medical opinion evidence

*Dr. James Ottesen's Opinion*

Dr. Ottesen conducted a psychological evaluation of Plaintiff in June 2006 for the Department of Rehabilitation Services. (Tr. 358–63). Dr. Ottessen diagnosed Plaintiff with depressive disorder with anxious symptoms, a learning disorder with deficits in reading, spelling, arithmetic, alcohol abuse, cannabis and methamphetamine dependence in sustained full remission, and borderline intellectual functioning. (Tr. 362). Dr. Ottessen opined that Plaintiff's prognosis for maintaining full-time gainful employment was fair so long as she "truly wants to work, refrains from substance abuse, and is willing to manage her depressive and anxious symptoms." (*Id.*) Dr. Ottesen recommended Plaintiff be placed in a job setting that offered on-

the-job training and did not require average intelligence, average reading, spelling, or mathematical ability. (Tr. 363).

## *Dr. Paul Staheli's Opinion*

In April 2012, Plaintiff underwent a mental disability evaluation with Paul Staheli, Ph. D. (Tr. 557–61). Dr. Staheli diagnosed PTSD and obsessive compulsive disorder ("OCD") and occupational problems. (Tr. 560). Dr. Staheli assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 40, indicating serious impairment in Ms. Atkinson's ability to function. (*Id.*) Dr. Staheli opined that Plaintiff's prognosis was "guarded" due to a history of abuse and her need to participate in mental health treatment to manage her fears and anxiety, which impeded her ability to obtain employment. (*Id.*) He also noted impairment in judgment, memory, concentration and persistence, and difficulty adapting to new situations. (Tr. 561).

## *Dr. Christian Monson's Opinion*

In connection with the 2016 hearing, Christian Monson, Psy. D., performed a consultative psychological examination of Plaintiff in June 2016. (Tr. 1407–16). Dr. Monson diagnosed major depressive disorder, social anxiety disorder, delusional disorder, PTSD, and an unspecified personality disorder. (Tr. 1413). He assigned Plaintiff a GAF score of 35. (*Id.*) Dr. Monson opined Plaintiff had no limitations in understanding, remembering, and carrying out simple instructions; and mild limitations in making judgments on simple work-related decisions, understanding and remembering complex instructions, and carrying out complex instructions. (Tr. 1414). He opined Plaintiff had moderate limitations in responding appropriately to usual work situations; and marked limitations in making judgments on complex work-related decisions and interacting with the public, co-workers, and supervisors. (Tr. 1414–15).

### III. STATEMENT OF RELEVANT LAW

#### a. Definition of Disability Under the Act

The Act states that an individual is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). The disabling impairment must last, or be expected to last, for at least twelve consecutive months. *Id.*; *Barnhart v. Walton*, 535 U.S. 212, 214–15 (2002).

#### b. Process for Determining Disability Under the Act

To determine whether a claimant is disabled, Social Security regulations set forth a five-step sequential evaluation process. The adjudicator considers whether a claimant: (1) engaged in substantial gainful activity during the alleged disability period, (2) had a severe impairment, (3) had a condition that met or medically equaled the severity of a listed impairment, (4) could return to his past relevant work, and if not (5) could perform other work in the national economy. 20 C.F.R. § 404.1520(a)(4). If a decision regarding the claimant's disability can be reached at any step in the sequential evaluation process, further evaluation is unnecessary. *Id.*

#### c. Standard of Review

A district court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings, and whether the correct legal standards were applied. *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The court may neither reweigh the evidence nor substitute its

judgment for that of the ALJ. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Where the evidence as a whole can support the agency's decision or an award of benefits, the court must affirm the agency's decision. *Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).

## IV. THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date, January 18, 2012. (Tr. 787). At step two, the ALJ found Plaintiff suffered from several impairments that were severe in combination. (*Id.*) The ALJ found Plaintiff suffered physical impairments: degenerative changes of the lumbosacral spine, left knee and ankle, and cervical spine; left calcaneal spurs; carpal tunnel syndrome; morbid obesity; chronic abdominal pain of unclear etiology; and status post giardiasis infection. (*Id.*) The ALJ also found Plaintiff suffered mental impairments: a learning disorder; borderline intellectual functioning; major depressive disorder; anxiety; and opioid dependency. (*Id.*). At step three, the ALJ found that Plaintiff did not meet the criteria for any listed impairment. (Tr. 788). The ALJ then found that Plaintiff could perform work at a medium exertional level, but was limited to simple duties and simple repetitive tasks. (*Id.*). At step four, the ALJ found Plaintiff had no past relevant work. (Tr. 797). At step five, the ALJ found Plaintiff was not disabled because she could perform work that existed in significant numbers in the national economy. (Tr. 798).

## V. DISCUSSION

The court will remand the Commissioner's decision because Plaintiff identifies several errors in the ALJ's decision that collectively undermine the ALJ's decision. The court finds some of these errors particularly troubling in light of the Appeals Council's instructions on remand. The court acknowledges here, as it did during oral argument, that this case presents an exceptionally close question.

5

### a. The ALJ failed to indicate the weight he ascribed to one medical source opinion and misstated the record several times when providing reasons for discounting two other medical-source opinions

Plaintiff argues the ALJ did not identify the weight he afforded Dr. Ottessen's opinion and that the ALJ's opinion did not consider certain limitations Dr. Ottessen discussed, such as Plaintiff's need for on-the-job training and her limited cognitive abilities. (ECF No. 17 at 10–11). Next, Plaintiff argues the ALJ misstated the record when he provided reasons for discounting Dr. Staheli's opinion and thus the ALJ's evaluation of that opinion is not supported by substantial evidence. (ECF No. 17 at 11–15). Finally, Plaintiff argues the ALJ's reasons for rejecting Dr. Monson's opinion suffers similar flaws to those used to discount Dr. Staheli's.

The Commissioner argues reversal is not necessary because, despite certain minor errors, the court can infer that the only portion of Dr. Ottesen's opinion afforded lesser weight involves matters not relevant to a disability determination. (ECF No. 19 at 8). The Commissioner also argues the ALJ adequately accounted for the limitations Dr. Ottessen discussed by restricting Plaintiff to simple work. (*Id.*) The Commissioner also suggests the age of Dr. Ottesen's opinion detracts from its probative value. (*Id.*) Finally, the Commissioner contends the ALJ provided sufficient reasons to afford lesser weight to Dr. Staheli's and Dr. Monson's opinions and that the record supports the reasons stated. (*Id.* at 9–12).

The court evaluates the ALJ's treatment of the three medical opinions under the regulations applicable to nontreating medical sources. While Plaintiff sets forth the standard for reviewing a treating source's opinion, she admits that no treating source opinion is at issue here.[1]

---

[1] While the procedures for treating and nontreating sources share several similarities, there are important differences. Primarily, the ALJ need not begin the analysis by considering whether a nontreating-source opinion should be afforded controlling weight.

(*See* ECF No. 17 at 9). When evaluating a nontreating source's opinion, an ALJ must explain the weight he chooses to afford the opinion and set forth "specific, legitimate reasons" if he chooses to reject the opinion. *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003); *see Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163–64 (10th Cir. 2012). For the reasons set forth below, Plaintiff demonstrates that the ALJ failed to specify the weight he ascribed to Dr. Ottesen's opinion and some reasons the ALJ proffered to discount the other doctors are unsupported by the record.

1. <u>Dr. Ottesen</u>

The ALJ's evaluation of Dr. Ottesen's opinion contains a flaw, but the flaw does not appear to harm Plaintiff. As the Commissioner rightly concedes, the ALJ failed to explicitly state the weight he afforded Dr. Ottesen's opinion. This failure is more troubling here than it might be in another case because the Appeals Council's earlier remand order specifically instructed the ALJ to consider Dr. Ottesen's opinion. (*See* Tr. 871).

> A. *The ALJ's failure to ascribe any particular weight to Dr. Ottesen's opinion did not harm Plaintiff because the ALJ's opinion is consistent with the material portions of Dr. Ottesen's opinion.*

Notwithstanding the flaw noted, the court agrees with the Commissioner that this error is harmless because the ALJ's opinion is consistent with all relevant portions of Dr. Ottesen's opinion. The "ALJ's failure to weigh a medical opinion involves harmless error if there is no inconsistency between the opinion and the ALJ's assessment of residual functional capacity." *Mays v. Colvin*, 739 F.3d 569, 578–79 (10th Cir. 2014).

Here, the Commissioner argues that ALJ only rejected only the portions of Dr. Ottesen's opinion that considered motivational factors because those factors are not proper considerations for a Social Security disability proceeding. (ECF No. 19 at 8). This argument is supported by express language in the opinion. The ALJ stated, "motivational and medical noncompliance . . . are not appropriate considerations for Social Security disability purposes." (Tr. 794). Plaintiff

7

does not suggest that motivational factors are a proper consideration. Dr. Ottesen's opinion does not otherwise contradict the ALJ's findings.

The court rejects Plaintiff's counterarguments on this point because Plaintiff has not identified any material conflict between the ALJ's decision and Dr. Ottesen's opinion. Plaintiff claims the ALJ did not discuss Plaintiff's need for on-the-job training or her borderline intellectual functioning. (ECF No. 17 at 11). Yet the ALJ explicitly discusses Dr. Ottesen's opinion regarding "claimant's prognosis for completing on the job training" as well as her "borderline intellectual functioning." (Tr. 793). Moreover, as pertains to Plaintiff's claim that the ALJ overlooked her borderline intellect, the ALJ expressly stated in his RFC determination that Dr. Ottesen's findings regarding Plaintiff's learning disorder and borderline intellect were "well-founded." (*Id.*) Additionally, the ALJ found that Plaintiff suffered from "borderline intellectual functioning" at step two that was severe in combination with her other impairments. (Tr. 787). Given the ALJ's express treatment of Plaintiff's borderline intelligence, the court rejects Plaintiff's argument that the ALJ failed to account for Dr. Ottsen's findings on that issue.

Next, to the extent Plaintiff argues that the ALJ's opinion is inconsistent with Dr. Ottesen's recommendation Plaintiff be placed in a job that provided on-the-job training, the court rejects this argument for two reasons. First, it is not clear Dr. Ottesen opinion actually meant this as a limitation. While Dr. Ottesen recommended Vocational Rehabilitation Services place Plaintiff in a job that provides such training, he did not opine that on-the-job training is a prerequisite for Plaintiff to work. (*See* Tr. 363). Second, even assuming Dr. Ottesen's statement regarding on-the-job training represents a true limitation, the ALJ limited Plaintiff to unskilled work, which is defined as work involving "little or no judgment to do simple duties that can be learned on the job in a short period of time." *Jaramillo v. Colvin*, 576 F. App'x 870, 875 n.4

8

(10th Cir. 2014) (citing SSR 85-15; 20 C.F.R. § 404.1568(a)). Accordingly, while unskilled work does not account for all mental limitations, it appears to accommodate Plaintiff's need for on-the-job training, to the extent such a limitation exists here.

### B. *The age of Dr. Ottesen's opinion does not render any error harmless.*

The court expressly rejects the Commissioner's argument that Dr. Ottesen's opinion has less probative value because it predates Plaintiff's alleged onset date. Whatever force this argument may have in another case, it has none in this case in light of the Appeals Counsel's remand instructions. The Appeals Counsel expressly instructed the ALJ to review Dr. Ottesen's opinion and disproved of the ALJ's conclusion the evidence was too remote in time to be probative of Plaintiff's abilities. (*See* Tr. 871). The Commissioner's argument appears to disregard the instructions on remand and asks the court to adopt a rationale already criticized by the Appeals Council. The court declines to do so.

In summary, Plaintiff demonstrates that the ALJ erred by not explicitly stating the weight he ascribed to Dr. Ottesen's opinion. This relatively-minor error is exacerbated because the Appeals Council specifically instructed the ALJ to review Dr. Ottesen's opinion on remand. Nonetheless, the court concludes this error was harmless. The ALJ's opinion appears consistent with Dr. Ottesen's opinion and the ALJ explicitly considered the portions of Dr. Ottesen's opinion that Plaintiff claims the ALJ overlooked. The alleged errors do not justify remand, though the court shares Plaintiff's frustration that the ALJ failed to ascribe any particular weight to Dr. Ottesen's opinion in light of the Appeals Council's remand instructions.

### 2. *Dr. Staheli*

Plaintiff argues the ALJ committed a number of errors in his review of Dr. Staheli's opinion. The court will begin by addressing the ALJ's claim that Dr. Staheli did not review any

9

medical records, then move to Plaintiff's claim the ALJ misstated Plaintiff's opioid addiction. The court will conclude by discussing the remainder of the alleged discrepancies that include Plaintiff's hallucinations and delusions, relationship with her father, schooling, and rape.

### A. *Failure to review any of the medical record*

Plaintiff correctly asserts the ALJ misstated Dr. Staheli's review of Plaintiff's medical history. Plaintiff contends the ALJ incorrectly stated that Dr. Staheli did not review any of the medical files, but Plaintiff points out that Dr. Staheli's report indicates he reviewed Dr. Ottesen's report. (ECF No. 17 at 12). The Commissioner contends the ALJ's true concern was with Plaintiff's veracity rather than the scope of records Dr. Staheli reviewed. The ALJ stated: "As a practical matter, the merit, reliability and accuracy of any psychiatric evaluation is largely dependent upon the accuracy and reliability of the information and reports provided by the patient. In this regard, there is no indication that Dr. Staheli reviewed any of the medical record." (Tr. 795). Thus, the Commissioner concludes, the ALJ's statement is true in all material respects because the records Dr. Staheli reviewed were largely created from Plaintiff's self-reports and therefore were negatively affected by her veracity, or lack thereof.

The record contradicts the ALJ's finding. The ALJ stated that Dr. Staheli did not review "any of the medical record." (*Id.*) This is not accurate. Dr. Staheli explicitly states he reviewed Dr. Ottesen's report. (Tr. 557). Accordingly, the ALJ's statement is incorrect because the ALJ criticizes Dr. Staheli's opinion based on a perceived lack of review of "any" medical record when Dr. Staheli reviewed Dr. Ottesen's report.

While the Commissioner's counterargument has logical appeal, the argument simply asks the court to infer too much. The ALJ did not criticize the records Dr. Staheli reviewed; the ALJ incorrectly stated Dr. Staheli reviewed no records. Likewise, the ALJ used Plaintiff's veracity as

10

a separate basis to discredit Plaintiff. The court will not presume the ALJ merely repeated himself when he indicated Dr. Staheli reviewed no medical records. Accordingly, it is uncertain whether the ALJ would have been persuaded to make any different findings if he had been aware that Dr. Staheli reviewed Dr. Ottesen's report. This uncertainty counsels in favor of remand, particularly when aggregated with other deficiencies in the ALJ's analysis.

### B. Opioid addiction

Next, there is no substantial evidence to support the ALJ's conclusion that Plaintiff suffered opioid dependence at the time of Dr. Staheli's April 30, 2012, evaluation. The ALJ afforded Dr. Staheli's opinion less than substantial weight, in part, because "there is no indication that Dr. Staheli was advised or was aware of the claimant's concurrent opioid dependence." (Tr. 795). Plaintiff points out that the earliest evidence in the record discussing an opioid dependence comes from March 2014. The Commissioner conceded during oral argument that the ALJ's statement lacks evidentiary support in the record. Thus, the ALJ incorrectly concluded Dr. Staheli's opinion was entitled to lesser weight for failing to address an opioid addiction. The record contains no evidence that Plaintiff had an opioid dependence in April 2012 when Dr. Staheli examined her.

### C. Other inconsistent claims

Plaintiff contends the ALJ misstated the record in discrediting Plaintiff, and then used Plaintiff's credibility as a basis to reject Dr. Staheli's opinion. The ALJ rejected Dr. Staheli's opinion, in part, based on Plaintiff's various "inconsistent claims." (Tr. 795). This appears to be a reference to the ALJ's findings that Plaintiff inconsistently reported (1) suffering hallucinations and delusions, (2) her relationship with her father, (3) schooling, and (4) rape.

11

i.  Hallucinations and delusions

Plaintiff correctly asserts the ALJ's conclusion that Plaintiff inconsistently reported hallucinations and delusions lacks substantial evidence to support it. Plaintiff reported to Dr. Monson in 2016 that she suffered hallucinations and delusions. (Tr. 1409). Plaintiff did not report these same symptoms to Dr. Staheli in 2012. (Tr. 557–61). Yet, much like the opioid addiction mentioned above, nothing about these two facts is contradictory. Plaintiff asserts she simply was not having hallucinations in 2012. The Commissioner, rightly, conceded as much during oral argument. Accordingly, the ALJ's statement regarding Plaintiff's inconsistent reports of hallucinations and delusions lacks record support.

ii.  Plaintiff's relationship with her father

By a narrow margin, the court finds the ALJ's conclusion about Plaintiff's statements about her relationship with her father are supported by substantial evidence. The ALJ found Plaintiff "advised Dr. Ottesen that her father was a milk farmer and framer . . . [but] inconsistently advised [Dr. Monson] that her father was in the 'drug business.'" (Tr. 794). Yet Dr. Ottesen's report also indicates Plaintiff reported her father "abused drugs." (Tr. 358).

Plaintiff makes an argument that might convince the court on de novo review. Her statements are not incompatible. Plaintiff told both doctors that her father was involved in drugs, whether by abusing them or selling them. Also, to the extent the ALJ believed that someone's occupation as a milk farmer or framer precludes them from also selling drugs, the belief appears to lack substantial evidence in the record to support it. Nonetheless, the court finds for the Commissioner because Plaintiff's recitation of her father's drug history can fairly be called incomplete and thus inconsistent because Plaintiff failed to report to Dr. Ottesen in 2012 that her father sold drugs, but she did tell Dr. Monson in 2016. This incomplete report provides a

sufficient basis on which to affirm. Accordingly, the court declines to remand on this basis, but notes that on remand the ALJ should clarify why he finds Plaintiff's two statements inconsistent.

Finally, there is another inconsistency in the record that supports the ALJ's finding that Plaintiff did not consistently report her relationship with her father. The ALJ noted that Plaintiff told Dr. Ottesen her closest relationship was with her father when she was growing up, but she "inconsistently" advised Dr. Monson that her father was emotionally abusive and threatening to her, once forcing her to stay in a bathroom for three days. (Tr. 794–95). Plaintiff does not argue the ALJ erred to the extent he relied on this inconsistency.

iii. Schooling

The ALJ correctly notes that Plaintiff once denied taking special education classes when applying for benefits, but later told examining sources that she did take special education classes. (*Compare* Tr. 233 *with* Tr. 359, 1410). Plaintiff argues about the weight this should be given, but this argument appears to simply invite the court to reweigh evidence because the record supports the ALJ's statement. Plaintiff identifies no error on this point.

Additionally, Plaintiff focuses on a separate portion of the ALJ's decision in which he notes Plaintiff inconsistently reported dropping out in either 6th or 7th grade. (*See* Tr. 797–98). The court finds no reversible error for two reasons. First, Plaintiff acknowledges she did report this fact inconsistently. Even if the court may have interpreted this evidence differently, a reasonable mind could find this inconsistency material. This ends the court's inquiry on substantial evidence review. This court is not in a position to reweigh evidence. Second, the ALJ did not mention this fact during his credibility findings or his analysis of Dr. Staheli's (or Dr. Monson's) opinion. The court does not conclude the ALJ used this as a basis to discredit Plaintiff

13

or to afford Dr. Staheli's opinion reduced weight. It appears the ALJ merely noted the discrepancy but concluded it was not material to his decision.

### iv. Rape

The court finds the ALJ did not err by concluding Plaintiff inconsistently reported her history as a victim of sexual violence. According to the ALJ, Plaintiff inconsistently reported, "being a victim of attempted rape while being threatened with a gun [but had previously] inconsistently advised Dr. Staheli that she had been actually raped in a shower, but without suggestion that it involved a gun." (Tr. 794). Dr. Staheli's 2012 report states: Plaintiff "has a phobia of showering alone due to being raped in the shower when she was younger." (Tr. 560). There is no mention of an attempted rape or anyone threatening Plaintiff with a gun in Dr. Staheli's 2012 report. Dr. Monson's 2016 report, on the other hand, states: "when [Plaintiff] was 16 years old, she was at a party and became drunk. A man attempted to rape her and when she refused, he pointed a gun at her." (Tr. 1409). Dr. Monson's report contains no mention of Plaintiff being raped in a shower. Plaintiff contends "[t]hese might be two aspects of the same incident or [Plaintiff] may have been assaulted more than once." (ECF No. 17 at 15). First, the court is troubled by Plaintiff's unwillingness to take any meaningful position on this issue. Presumably, Plaintiff knows her relevant history and could easily argue to the court her true history. She does not do so. Instead, she speculates about what "might be" the case. The court will not credit this argument because Plaintiff does nothing to clarify the record or reconcile the apparent discrepancy.

Moreover, even if the court credited Plaintiff's ambivalent position, her two statements to Drs. Staheli and Monson at least demonstrate that Plaintiff is an inconsistent historian. Plaintiff failed in 2012 to tell Dr. Staheli specifics of an alleged attack (attempted rape involving

threatened use of a firearm) that occurred when Plaintiff was sixteen, but she did recount the story to Dr. Monson in 2016. Plaintiff believed her history of sexual assault was relevant enough to disclose to these examiners, but for some reason – unexplained even in Plaintiff's brief – she reported different assaults to each examiner. This provides substantial evidence for the ALJ to conclude Plaintiff "inconsistently" reported her history to the two doctors, particularly in light of Plaintiff's present failure to clarify the record.

3. *Dr. Monson*

A. *Failure to review any of the medical record*

Plaintiff correctly notes that the ALJ incorrectly stated that Dr. Monson did not review any of the medical files, when Dr. Monson's report expressly states he reviewed records from DDS. (ECF No. 17 at 16). The ALJ's first stated reason for affording lesser weight to Dr. Monson's opinion is: "There is no indication [Dr. Monson] reviewed any of the medical record." (Tr. 796). Dr. Monson's report states: "[Plaintiff]'s full medical records were not available, although records provided by DDS were reviewed." (Tr. 1407). Accordingly, while the exact scope is unclear, Dr. Monson clearly reviewed some of Plaintiff's medical records. The ALJ was incorrect to state otherwise. The Commissioner did not offer any explanation for this apparent discrepancy in the ALJ's decision. Thus, the ALJ's first stated reason for discrediting Dr. Monson's opinion is not supported by the record.

B. *Opioid addiction*

Substantial evidence supports the ALJ's conclusion that Plaintiff inconsistently reported her opioid dependence to Dr. Monson during the June 2016 evaluation. The ALJ afforded Dr. Monson's opinion less than substantial weight, in part, because "he was apparently unaware of [Plaintiff]'s opioid dependence, and drug-seeking behavior." (Tr. 795). Plaintiff argues there is

no evidence of her opioid dependence in her medical records after 2015. (ECF No. 17 at 6). Further, she points out that she testified at the administrative hearing that she could no longer afford opiates. (*Id.*) Plaintiff's argument is unpersuasive.

Plaintiff affirmatively denied abusing opiates when she met with Dr. Monson, despite setting forth an illicit drug history spanning eight years. Plaintiff told Dr. Monson that she abused illicit drugs eight years before she met with Dr. Monson. (Tr. 1410). Yet Plaintiff simultaneously denied abusing opiates. (*See id.*) Thus, regardless of whether she stopped using opiates in 2015, she failed to report her prior abuse to Dr. Monson. Plaintiff believed her drug use from eight years earlier was relevant. Nonetheless, she denied abusing opiates, which she admits she was doing as recently as 2015. The ALJ's statement of the record is correct. Plaintiff's argument on this point fails.

*C. Other inconsistent claims*

Finally, Plaintiff contends the ALJ's reliance on other inconsistencies undermines the ALJ's basis for affording Dr. Monson's opinion lesser weight. (ECF No. 17 at 16). The ALJ's second basis for affording Dr. Monson's opinion lesser weight was that "there is no indication that he was aware of the myriad of psychiatric and other inconsistencies, detailed above." (Tr. 796). Plaintiff's argument incorporates her earlier arguments regarding Dr. Staheli's opinion and the ALJ's findings that Plaintiff inconsistently reported suffering hallucinations and delusions, her relationship with her father, schooling, and rape. Thus, the ALJ's basis for rejecting Dr. Monson's opinion is flawed because the ALJ did not have a factual basis to conclude Plaintiff inconsistently reported suffering hallucinations and delusions. *See supra* Part I.b.2.C. On the other hand, the ALJ had a sufficient basis to conclude Plaintiff inconsistently reported: her relationship with her father, schooling, and rape. *Id.*

16

### b. The ALJ's misstatements of the record constitute reversible error because they erode the ALJ's basis for rejecting the medical source opinions

During oral argument, the Commissioner mentioned, for the first time, the unreported case *Pickup v. Colvin* to argue the court should find the ALJ's errors harmless here. 606 Fed. App'x 430 (10th Cir. 2015). In *Pickup*, the Tenth Circuit affirmed and ALJ's decision notwithstanding the reviewing court's finding that two reasons the ALJ provided for his credibility determination were flawed. *Id.* at 433. The Tenth Circuit concluded that the ALJ stated sufficient alternative bases on which to find Plaintiff not entirely credible notwithstanding certain errors with the ALJ's credibility analysis. *Id.* at 433–34.

The court declines to apply *Pickup* because that case involved review of a credibility determination, rather than a review of medical source opinions as we have here. Reviewing courts afford heightened deference to an ALJ's credibility determinations. *See, e.g.*, *Adams v. Chater*, 93 F.3d 712, 715 (10th Cir. 1996). "Generally, credibility determinations are the province of the ALJ, 'the individual optimally positioned to observe and assess witness credibility.'" *Id.* (quoting *Casias v. Secretary of Health & Human Servs.,* 933 F.2d 799, 801 (10th Cir.1991)); *see Williams v. Bowen*, 844 F.2d 748, 755 (10th Cir. 1988) ("special deference is traditionally afforded a trier of fact who makes a credibility finding"). For this reason, the court finds another unpublished case, *Alexander v. Barnhart*, more persuasive in the instant case. 74 Fed. App'x 23 (10th Cir. 2003). In *Alexander*, the Tenth Circuit concluded that the ALJ's misstatement of medical source's statements "cannot stand as substantial evidence . . . [or] suffice to meet the Commissioner's requirements for evaluating opinion evidence. *Id.* 26–27.

Here, the ALJ's treatment of Dr. Staheli's opinion is most problematic. The parties discuss three reasons the ALJ discredited Dr. Staheli: failure to review medical records, lack of awareness of a contemporaneous opioid addiction, and Plaintiff's lack of credibility. The first

17

two reasons rest on false premises. Accordingly, they do not constitute good reasons under

*Alexander*. For this reason, the case will be remanded. Without these rationales to support the

ALJ's treatment of Dr. Staheli's opinion, the court is left to guess whether the ALJ might afford

the opinion greater weight. The court will not make that guess because to do so impermissibly

substitutes the court's judgment for the ALJ's. Rather, the court will remand the case to allow the

ALJ to make the determination in the first instance.

Finally, even assuming the ALJ's credibility determination regarding Plaintiff might

ordinarily provide an independent basis on which to affirm; that credibility analysis contains a

misstatement of the record regarding Plaintiff's hallucinations and delusions. *See supra* Part

V.a.2.C.i. The court acknowledges that a single error in the ALJ's credibility determination may

not be fatal to the ALJ's credibility determination under *Pickup*. Nonetheless, the court finds that

the ALJ's flawed credibility finding, standing alone, does not constitute a good reason to reject

Dr. Staheli's opinion.

Based on the foregoing, the court will remand this case for further consideration based on

the aggregate harm caused by the errors identified above.[2] The ALJ improperly rejected or

discounted several opinions based on misstatements of the record. The ALJ incorrectly stated

that Dr. Staheli failed to review any medical records, or consider Plaintiff's opiate addiction and

her hallucinations and delusions. The ALJ also incorrectly stated that Dr. Monson failed to

review any medical records or consider Plaintiff's hallucinations and delusions.

---

[2] Given the court's conclusion above, it does not reach Plaintiff's argument regarding the ALJ's evaluation of her mental impairments. (*See* ECF No. 17 at17–18).

## VI. ORDER

Based on the forgoing, the court **REMANDS** the Commissioner's decision for further consideration.

Dated this 7th day of February, 2018.

_____
Dustin B. Pead
United States Magistrate Judge